Ariadne Panagopoulou (AP-2202)
Pardalis & Nohavicka, LLP
950 Third Avenue, 25th Floor
New York, NY 10022
Telephone: (212) 213-8511
Facsimile: (718) 777-0599
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jane Doe, )<br>)<br>     *Plaintiff*, )<br>)<br>   -v- )<br>)<br>Mutaz Hyassat, )<br>)<br>     *Defendant*. )<br>_____) | **REDACTED AMENDED**<br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

Plaintiff Jane Doe, by her attorneys Pardalis & Nohavicka, LLP, brings this action against Defendant Mutaz Hyassat alleging claims of civil assault and battery, false imprisonment, and intentional infliction of emotional distress.

## OVERVIEW

1. Plaintiff seeks damages to redress the injuries she has suffered as a result of her sexual assault and rape by Defendant on the night of July 7, 2017 and morning of July 8, 2017 in New York City, New York.

2. Defendant contacted Plaintiff through a social networking site in the summer of 2017. After luring Plaintiff to meet him for dinner, Defendant drugged Plaintiff without her knowledge or consent with GHB, commonly known as the "date rape drug." During the evening

and/or subsequent morning, Defendant took Plaintiff to his apartment and raped her. Plaintiff awoke the subsequent morning naked in bed with Defendant, who had sexually assaulted and raped her the night before, in addition to his multiple, forcible attempts the subsequent morning at both oral and anal rape, including partial anal penetration. Subsequent medical and forensic examinations have shown that Defendant's DNA matches a DNA sample collected from Plaintiff's underwear, and that Plaintiff has developed a serious eye condition with vision loss and disability at the severe and profound impairment level, consistent with the contraction of herpes, that will require a corneal transparent and carries the risk of permanent blindness. In the months since Defendant's attack, Plaintiff has experienced serious cognitive, psychological and physical impacts that are debilitating, persistent, and ongoing in nature.

3. Plaintiff was subject to acts of forcible drugging, rape, sexual misconduct, criminal sexual acts, sexual abuse, forcible touching, assault, battery, kidnapping, and intentional and reckless infliction of emotional distress by the Defendant.

**JURISDICTION AND VENUE**

4. Plaintiff is a citizen of the State of New Jersey for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

5. Defendant is a citizen of the Hashemite Kingdom of Jordan for the purposes of diversity jurisdiction under 28 U.S.C. § 1332.

6. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C.§ 1332 as there exists diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

7. This Court may properly maintain personal jurisdiction over Defendant under Rule 4 of the Federal Rules of Civil Procedure because Defendant's contacts with this state and this judicial district are sufficient for exercise of jurisdiction over Defendant so as to comply with traditional notions of fair play and substantial justice.

8. Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant is a resident of this district and conducts business in this judicial district, and because the tortious acts committed by Defendant giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

**Plaintiff:**

9. <u>Jane Doe (Plaintiff)</u> is a 41-year-old female and a first-generation citizen of the United States. At the time she was sexually assaulted and raped by Defendant, Plaintiff was and remains employed as a GS-14 senior civil servant at the United States Department of the Treasury in its Manhattan branch.

10. Plaintiff is a devout Christian who does not believe in sex outside of marriage and is unmarried. She has chosen to abstain from premarital sex in all of her romantic relationships.

11. At all relevant times, Plaintiff resided and resides with her parents and brother in New Jersey. Plaintiff is a citizen of the State of New Jersey.

**Defendant:**

12. <u>Mutaz Hyassat (Defendant)</u> is a Jordanian national who, upon information and belief, resides in New York City for the majority of the year.

13. At all relevant times, upon information and belief, Defendant held a temporary

position as member of the Advisory Committee on Administrative and Budgetary Questions ("ACABQ") for the United Nations, for a term beginning March 2017 and ending March 2020.

14. At the time of his assault and rape of Plaintiff in July 2017, Defendant was present on United States soil to participate in the ACABQ in a personal capacity, and **not** as a representative of the Jordanian government.

15. Upon information and belief, Defendant did not enter the United States in pursuance of official diplomatic duties.

## FACTUAL ALLEGATIONS

**Defendant Contacts Plaintiff on Social Media and Lures Her to Dinner**

16. On July 2, 2017, Defendant sent Plaintiff a message through InterNations, a social networking site utilized primarily by both former and present United Nations staff.

17. Prior to Defendant's outreach to Plaintiff on July 2, 2017, Plaintiff had no interactions with Defendant and did not know Defendant personally.

18. Upon information and belief, Defendant contacted Plaintiff through social media with the intent of luring her to an in-person meeting and then sexually assaulting her.

19. After several online conversations, Defendant invited Plaintiff to dinner, and Plaintiff accepted the invitation. Due to her domicile in New Jersey, Plaintiff explained to Defendant that she would be taking the bus home following dinner and requested that Defendant select a restaurant in proximity to the Port Authority bus station.

20. On Friday, July 7, 2017, Plaintiff met Defendant for dinner at El Rio Grande, a restaurant located at 160 38th St. in Midtown Manhattan approximately 6.15 PM.

21. During their meal, Defendant made several sexually-charged and crass comments to Plaintiff, which made Plaintiff highly uncomfortable. Defendant told Plaintiff that

she was dressed too conservatively and that she should show more cleavage. Referring to Plaintiff's ethnicity, Defendant mentioned that he once had dated another Korean woman, who, he stated, refused to have sex with him because he was "too big."

22.     During the dinner, Defendant offered Plaintiff a full glass of a pink drink, from which she took one sip out of politeness. Plaintiff had a small amount of wine with her dinner.

23.     Towards the end of the meal, Defendant kissed Plaintiff, which she allowed him to do even though she normally would not.

24.     After the kiss, Plaintiff had no memory of any subsequent events on the night of July 7, 2017.

25.     Plaintiff has never had a memory loss nor any dissimilar or related reaction to this amount nor any amount of alcohol except for this night of the rape and sexual assault.

26.     Plaintiff's last memory of the night was within the restaurant at approximately 10PM.

27.     Other than this night, Plaintiff has never had a memory lapse of several hours, prior to nor after this night.

**Plaintiff is Sexually Assaulted and Raped by Defendant in July 2017**

28.     Defendant spiked Plaintiff's drink or food with gamma-Hydroxybutyric acid ("GHB"), the so-called "date-rape drug," with the purpose of incapacitating Plaintiff and then assaulting her, consistent with a drugging that night.

29.     Plaintiff has never knowingly consumed GHB nor any other illicit substance.

30.     Upon information and belief, Plaintiff was raped by Defendant while unconscious and incapable of consent between the evening of July 7, 2017 and the morning of July 8, 2018.

31. Plaintiff's first memory after the kiss in the restaurant on the evening of July 7 is waking up the following morning, Saturday, July 8. Plaintiff woke up to find herself naked in bed with Defendant, who also was naked, in an apartment in Manhattan. Upon waking, Plaintiff immediately felt pain in her stomach.

32. Plaintiff told Defendant that her stomach hurt, and that she didn't remember anything after dinner.

33. Defendant stated, "I wouldn't if someone is drunk" and then said, "I would have used a condom anyhow." Defendant also told Plaintiff that she should "shave down there" for health reasons, and pointed out that he was shaven.

34. Defendant then began to penetrate Plaintiff anally without her consent. Plaintiff immediately pushed Defendant away from her and began to look for her clothing.

35. At no point during the entire meeting, did Plaintiff ever consent to any type of physical contact.

36. As Plaintiff was sitting on the side of the bed looking for her clothes, Defendant attempted to put his erect penis in her mouth.

37. When Plaintiff was able to finally ask for her clothes, Defendant gave them to her. He then walked her to the subway, where they separated.

38. At no point, did Plaintiff consent to any type of sexual activity whatsoever.

39. Plaintiff noticed following the attack that she was sore in her upper, inner thighs.

40. Upon arriving home in New Jersey, Plaintiff slept and could not stay awake at all for the majority of the weekend, which was very unusual relative to her customary sleep schedule. At one point, upon waking up briefly prior to immediately falling back asleep, she

noticed that she was bleeding from her vagina.

**Plaintiff Immediately Reports her Assault at Valley Hospital in Ridgewood, New Jersey and the New York City Police Department**

41. On Monday, July 10, Plaintiff began piecing together her experience and sought medical treatment at Valley Hospital in Ridgewood, New Jersey, where she reported the rape. Staff at the hospital took a rape kit from Plaintiff.

42. The sexual assault examiner noticed several bruises on her head/neck area.

43. On Tuesday, July 11, 2017, Plaintiff reported the attack to the New York City Police Department ("NYPD"). The NYPD's investigation collected evidence that corroborate Plaintiff's testimony.

44. In or about the spring of 2018, Plaintiff learned that the rape kit collected at Valley Hospital came back with male DNA on Plaintiff's underwear. Defendant provided a DNA sample to the NYPD, and it matched the male DNA on Plaintiff's underwear.

**Plaintiff Suffers from Long-Term Medical and Psychological Effects of the Assault**

45. Shortly after the assault, Plaintiff began to experience medical complications consistent with, and indicative of, a sexual assault.

46. Soon after the attack, Plaintiff also experienced the onset of oral cold sores, the presence of which is consistent with having contracted herpes. A subsequent test of Plaintiff's blood was returned positive for the herpes simplex virus. Plaintiff also was diagnosed with bacterial vaginosis, a common infection in rape victims, in the weeks after the attack. The resultant infection of bacterial vaginosis now places her at a higher risk of contracting the human immunodeficiency virus (HIV).

47. In addition, soon after the attack Plaintiff experienced the onset of eye problems, including but not limited to: excruciating and unbearable pain, excessive tearing,

acute and persistent redness, and hyper-photosensitivity, for which she first sought medical treatment on July 14, 2017.

48. Subsequently, Plaintiff was diagnosed with ulcerative keratitis (i.e., corneal ulcer), an inflammation of the eye's cornea that can lead to permanent blindness. Presently, the vision in her left eye has deteriorated to the point of legal blindness. Corneal ulcers are a common result of bacterial and viral infections such as herpes.

49. Plaintiff's ophthalmologist directly attributes Plaintiff's eye degeneration to her having contracted herpes. Plaintiff has been notified she will require a corneal transplant to repair at least a portion of her vision.

50. Following, the attack, Plaintiff also has experienced debilitating and persistent neurological symptoms, including double vision which has deteriorated to the point of disability and vision loss at the severe and profound impairment level consistent with the contraction of herpes that will require a corneal transparent and carries the risk of permanent blindness even with a transplant. Additionally plaintiff suffers from the following resultant from the rape and assault which include but are not limited to: nightmares, significant weight loss, panic attacks, memory loss, difficulty concentrating, inability at times to even simple multi-task, and at times, difficulty speaking.

51. Plaintiff's physician at Mt. Sinai Hospital has diagnosed her with mild traumatic brain injury (TBI), a condition frequently associated with exposure to GHB and/or sexual assault. This was not attributable to any other event.

52. In addition to the physical injuries inflicted by and as a result of Defendant's rape of Plaintiff, Plaintiff also has suffered severe psychological distress, including but not limited to post-traumatic stress disorder (PTSD) for which she has been under the care of a

psychologist since summer 2017.

**Damages suffered by Plaintiff**

53. As a direct and proximate result of the sexual assault and rape perpetrated by Defendant on her, Plaintiff has suffered immediate physical pain and suffering.

54. As a direct and proximate result of the sexual assault and rape perpetrated by Defendant on her, Plaintiff has suffered permanent, debilitating and life-changing medical complications.

55. As a direct and proximate result of the sexual assault and rape perpetrated by Defendant on her, Plaintiff has suffered unbearable distress, emotional pain and anguish, mental pain and suffering, and loss of enjoyment of life.

56. As a direct and proximate result of the sexual assault and rape perpetrated by Defendant on her, Plaintiff has suffered incurred special damages, including medical and legal expenses and significant time off from work.

57. The sexual assault, kidnapping, drugging and rape perpetrated by Defendant upon Plaintiff was an intentional, criminal act which required forethought and planning.

58. The conduct of Defendant demonstrates willful, reckless, and intentional tortious conduct and a wanton or reckless disregard for the rights of the Plaintiff. The harm committed towards Plaintiff was the result of cumulative acts involving intentional malice, trickery, and deceit.

59. Due to these circumstances, punitive damages are appropriate in order to punish Defendant for his actions and to defer Defendant from repeating his tortious conduct. It is the hope and prayer of Plaintiff that the past, present and continued suffering she has and continues to endure shall not be in vain, that the results of this court action will serve to deter other

similarly-placed Defendants in committing rape and sexual assault amongst future victims.

## FIRST CAUSE OF ACTION

### Battery

60. Plaintiff realleges and incorporates by reference all allegations made in all preceding paragraphs as if fully set forth herein.

61. Defendant intentionally engaged in bodily contact with Plaintiff which was harmful and offensive in nature. Specifically, Defendant drugged Plaintiff, without her knowledge or consent, with GHB, a commonly known "date rape drug" and proceeded to sexually assault and rape Plaintiff, while Plaintiff was in a comatose-like state.

62. None of the aforementioned conduct was authorized, consented to or invited by Plaintiff.

63. As a result of the defendant's batteries and offensive touching of the plaintiff, the plaintiff was caused to suffer serious and permanent personal injuries, as alleged above.

64. The defendant's conduct was outrageous and violates all standards of human decency, and requires that punitive damages be awarded.

65. By reason of the foregoing, the plaintiff is entitled to recover the full extent of her damages, including punitive damages, in an amount to be determined by the jury at trial.

## SECOND CAUSE OF ACTION

### Assault

66. Plaintiff realleges and incorporates by reference all allegations made in all preceding paragraphs as if fully set forth herein.

67. Defendant engaged in physical conduct, which placed Plaintiff in apprehension of imminent harmful and offensive contact. Specifically, the following morning, after

Defendant sexually assaulted and raped Plaintiff, Defendant attempted to forcibly exert himself upon Plaintiff after she had woken up. Defendant tried to penetrate Plaintiff both orally and anally that morning without her consent.

68. None of the aforementioned conduct was authorized or invited by the plaintiff.

69. As a result of the defendant's conduct, the plaintiff was caused to suffer serious and permanent personal injuries, as alleged above.

70. The defendant's conduct was outrageous and violates all standards of human decency, and requires that punitive damages be awarded.

71. By reason of the foregoing, the plaintiff is entitled to recover the full extent of her damages, including such punitive damages as may be allowed by law, in an amount to be determined by the jury at trial.

### THIRD CAUSE OF ACTION

### False Imprisonment

72. Plaintiff realleges and incorporates by reference all allegations made in all preceding paragraphs as if fully set forth herein.

73. Defendant willfully detained Plaintiff, without her consent, and without any legal authority.

74. Before meeting in person, Plaintiff made it clear to Defendant that she would be taking the bus home following dinner and that would not be going to Defendant's apartment. However, unbeknown to Plaintiff, Defendant drugged Plaintiff, kidnapped her and took her to his apartment, where he sexually abused her, while she drifted in and out of consciousness.

75. As a result of the defendant's conduct, the plaintiff was caused to suffer serious and permanent personal injuries, as alleged above.

76. The defendant's conduct was outrageous and violates all standards of human decency, and requires that punitive damages be awarded.

77. By reason of the foregoing, the plaintiff is entitled to recover the full extent of her damages, including such punitive damages as may be allowed by law, in an amount to be determined by the jury at trial.

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

78. Plaintiff realleges and incorporates by reference all allegations made in all preceding paragraphs as if fully set forth herein.

79. By performing the tortious acts alleged herein, including raping, sexually assaulting, kidnapping, and drugging Plaintiff against her will, Defendant engaged in extreme and outrageous conduct.

80. Upon information and belief, the Defendant intended to cause the Plaintiff to suffer severe emotional distress.

81. Upon information and belief, the Defendant recklessly disregarded the substantial probability of causing severe emotional distress to Plaintiff.

82. As a result of Defendant's actions, Plaintiff suffered severe emotional distress which adversely affected, and continues to adversely effect, her physical health.

83. The defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

84. By reason of the foregoing, the plaintiff is entitled to recover the full extent of her damages, including such punitive damages as may be allowed by law, in an amount to be determined by the jury at trial.

## DEMAND FOR TRIAL BY JURY

85. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A. That judgment be entered against Defendant for special damages, compensatory damages, and punitive damages in an amount which shall be shown to be reasonable and just by the evidence and in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs;

B. That all costs of this action be assessed against Defendant, including all reasonable past and future attorney's fees, costs and expenses of this action;

C. That an order of protection in favor of Plaintiff and all associated with her be issued so as to protect them from harm and harassment from Defendant and his agents and associates;

D. An award of pre-judgment interest of nine per cent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001-5004;

E. An award of post-judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York Civil Practice Law and Rules § 5003; and

F.  Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       September 18, 2018

                                                     Respectfully submitted,
                                     **PARDALIS& NOHAVICKA, LLP**

By:   /s/Ariadne Panagopoulou
       Ariadne Panagopoulou (AP-2202)
       *Attorneys for Plaintiff*
       950 Third Avenue, 25th Floor
       New York, New York 10022
       Tel: 212.213.8511 | Fax: 718.777.0599
       Email:  ari@pnlawyers.com