UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                              Plaintiff,

                -against-

MUTAZ HYASSAT,

                              Defendant.

**ORDER**

18 Civ. 6110 (PGG)

PAUL GARDEPHE, U.S.D.J.

        In this action, Plaintiff Jane Doe alleges that Defendant Mutaz Hyassat sexually assaulted her, and asserts claims for battery, assault, false imprisonment, and intentional infliction of emotional distress.  (See Am. Cmplt. (Dkt. No. 7) ¶¶ 1, 60-84)  According to Plaintiff, Defendant Hyassat is a Jordanian national who resides primarily in New York City, and works for the United Nations Advisory Committee on Administrative and Budgetary Questions. (Id. ¶¶ 12-13)

        On December 17, 2018, this Court granted Plaintiff permission to serve Defendant Hyassat by alternative means of service – namely, by Facebook message and by e-mail.  (See Order (Dkt. No. 17))  Plaintiff subsequently attempted to serve Defendant through email and sent a Facebook message to Defendant.  Plaintiff's attempts to e-mail Defendant were unsuccessful.  (See Jan. 2, 2019 Pltf. Ltr. (Dkt. No. 18) at 1, Ex. A)  Plaintiff now seeks an order stating that (1) service via Facebook may be deemed sufficient service; or (2) Defendant may be served through a lawyer who Plaintiff believes represents Defendant in connection with a criminal investigation concerning the same conduct underlying Plaintiff's lawsuit.  (Id. at 1-2) For the reasons stated below, Plaintiff's application will be denied.

## BACKGROUND

The Complaint was filed on July 5, 2018, and Plaintiff filed an amended complaint on September 18, 2018.  (See Cmplt. (Dkt. No. 1); Am. Cmplt. (Dkt. No. 7))  After the summons was issued, Plaintiff's counsel hired Serve NY, a process server, to serve Defendant. (Dec. 10, 2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 3)  Searches conducted on a proprietary database and over the internet revealed three possible residential addresses for Defendant in New York City.

Serve NY's efforts to serve Defendant at these three addresses were unsuccessful. (Id.)  At two of the addresses, the process server was told that the Defendant was not a resident. (Id.; Agelopoulos Aff. (Dkt. No. 16-1))  At the third location - the Permanent Mission of Jordan to the United Nations – the process server was refused access, and Mission personnel refused to accept service of process.  (Dec. 10, 2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 3; Agelopoulos Aff. (Dkt. No. 16-1))

On November 29, 2018, a different process server registered for and attended a conference at U.N. Headquarters, hoping that Defendant would be in attendance and could be served when he exited U.N. Headquarters after the conference.[1]  The process server was not able to locate Defendant after the conference, however.  (Dec. 10, 2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 3-4; see also Antiaris Aff. (Dkt. No. 16-1))

On December 9, 2018, after these failed efforts to serve Defendant, Plaintiff requested permission to serve Defendant by (1) e-mailing Defendant at two e-mail addresses

---

[1]  Plaintiff states that service of process within U.N. Headquarters would be invalid, citing the Convention on the Privileges and Immunities of the United Nations ("CPIUN").  (See id. at 3 ("The United Nations . . . shall enjoy immunity from every form of legal process. . . .") (quoting CPIUN, Art. 2, § 2))

listed for Defendant in United Nations databases; and (2) contacting Defendant via his Facebook

profile, which Plaintiff believed had been updated at least as recently as April 2018. (Dec. 10,

2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 4; see also id. at Ex. B (list of contact points for U.N.

member states and observer non-member states); Ex. C (screenshot of Facebook profile page))

This Court granted Plaintiff's request, concluding that service pursuant to the methods specified

in New York law was impractical. (Order (Dkt. No. 17) at 3-4)

        Plaintiff attempted to serve Defendant by these alternative means on December

18, 2018. (See Panagopoulou Aff. (Dkt. No. 18-3) ¶ 2) Plaintiff's attempts at e-mail service

were not successful: "Unfortunately, both e-mails to Mr. Hyassat (to

Hyassat@jordanmissionun.com and to mhyassat@jordanmission.ch) bounced back as

undeliverable." (Jan. 2, 2019 Pltf. Ltr. (Dkt. No. 18) at 1) As to Facebook, on December 18,

2018, Plaintiff's counsel sent a Facebook message to the Facebook user Plaintiff believes is the

Defendant.[2] (See id.; Jan. 2, 2019 Pltf. Ltr., Ex. A (screenshot of Facebook message) (Dkt. No.

18-1)) The message sent to the Facebook user includes pdf copies of the electronic summons

issued to Defendant, and the Amended Complaint. The Facebook message reads: "Attached,

please find a summons and Amended Complaint in a lawsuit filed against you. Please consult a

lawyer immediately. Ariadne Panagopoulou, Counsel for Plaintiff." (See Jan. 2, 2019 Pltf. Ltr.,

Ex. A (Dkt. No. 18-1))

        "[O]n December 24, 2018, [Plaintiff's counsel] checked [her] Facebook again. At

this time, [her] message to Mr. Hyassat was still visible but [she] noticed that Mr. Hyassat had

---

[2]  The name the Facebook user provides is "Mutaz Hyassat." That user states that he "[w]orks at
the United Nations," "[s]tudied at University of Jordan," and "[l]ives in New York, New York."
(See Jan. 2, 2019 Pltf. Ltr., Ex. A (Dkt. No. 18-1))

since disabled his Facebook account." (Panagopoulou Aff. (Dkt. No. 18-3) ¶ 3; see also Jan. 2, 2019 Pltf. Ltr., Ex. B (Dkt. No. 18-2)) The Facebook user never responded to the message.

Plaintiff submits that her Facebook message should be deemed sufficient service, "[g]iven that Plaintiff has made varied efforts to effectuate service of process upon Defendant, and that Plaintiff has good grounds to believe that Hyassat is very well aware of this civil action against him but is trying to intentionally avoid service." (Jan. 2, 2019 Pltf. Ltr. (Dkt. No. 18) at 1)

In the alternative, Plaintiff seeks permission to serve Defendant Hyassat through Kenneth Kerner, whom Plaintiff asserts is "the attorney that represents him in an active and pending criminal investigation against him brought by the same allegations." (Id. at 1-2) Plaintiff's counsel "confirmed that Mr. Kerner is Defendant's attorney by conversations [she] had with . . . the [New York City Police Department ("NYPD")] detective currently in charge of the criminal investigation brought against Defendant." (Id. at 2; see also Panagopoulou Aff. (Dkt. No. 18-3) ¶ 5 ("On December 19, 2018, our office had a telephone conversation with Detective Santos, who informed us that attorney Kenneth Todd Kerner currently represents the Defendant with respect to the ongoing criminal investigation."))

In a January 8, 2019 letter, Plaintiff's counsel states that on that day she

> personally contacted Mr. Kerner's office and asked to speak to Mr. Kerner. The law secretary asked me what the call was regarding and I responded that it was about "Mr. Mutaz Hyassat[.]"[] Mr. Kerner accepted my phone call but when he realized that I was an attorney representing the Plaintiff in a lawsuit against Mr. Hyassat, he became extremely evasive and would not answer any of my questions regarding the extent of his involvement in the criminal investigation against Mutaz Hyassat. Mr. Kerner did confirm, however, that he "met with him [Mutaz Hyassat]" but indicated that he would not accept service on his behalf.

(Jan. 8, 2019 Pltf. Ltr. (Dkt. No. 19) at 1)  Plaintiff's counsel asserts that it was "clear from Mr. Kerner's tone[] that he knew exactly who Mr. Hyassat is and that he has been involved in the criminal investigation currently pending against him."  (Id.)

## DISCUSSION

Pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure, "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  "In New York State, subsections (1), (2), and (4) of N.Y. C.P.L.R. § 308 provide for service by 'personal delivery, delivery and mailing, and nailing and mailing, respectively.'"  Tishman v. The Associated Press, No. 05 Civ. 4278 (GEL), 2006 WL 288369, at *1 (S.D.N.Y. Feb. 6, 2006) (citation omitted).  "Where service pursuant to these subsections is 'impracticable,' however, service may be effected 'in such a manner as the court, upon motion without notice, directs.'"  Id. (citing N.Y. C.P.L.R. § 308(5); State Street Bank and Trust Co. v. Coakley, 790 N.Y.S.2d 412, 413 (2d Dept. 2005)).

As discussed above, in a December 17, 2018 Order, this Court determined that service pursuant to the methods specified in New York law is impractical, and that alternative service is appropriate.  (See Order (Dkt. No. 17) at 3)  The Court must now determine whether Plaintiff's purported service through Facebook, or proposed service through Defendant's alleged criminal defense attorney, is adequate.

## I.    SUFFICIENCY OF SERVICE VIA FACEBOOK

A particular means of service is not sufficient unless it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted) This standard is "[a]n elementary and fundamental requirement of due process." Id.

In this Court's December 17, 2018 Order granting Plaintiff's request to serve Defendant Hyassat by alternative means, the Court concluded that service via a combination of Defendant's official work e-mail addresses and his Facebook account would meet the due process standard. (See Order (Dkt. No. 17) at 3-4) In granting Plaintiff's request for alternative service, the Court relied primarily on cases permitting alternative service by means of e-mail, rather than on cases permitting service by communication through Facebook. (See Order (Dkt. No. 17) at 4)

As discussed above, Plaintiff was not able to effect service through Defendant's alleged e-mail addresses, and now contends that a message sent to Facebook user "Mutaz Hyassat" should be deemed adequate service. Plaintiff cites no cases suggesting that service via Facebook alone is permissible. Moreover, this Court's research indicates that courts have relied on Facebook service only as a "backstop" for service by other means. See, e.g., F.T.C. v. PCCare247 Inc., No. 12 CIV. 7189 PAE, 2013 WL 841037, at *5 (S.D.N.Y. Mar. 7, 2013) ("To be sure, if the FTC were proposing to serve Defendants only by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise as to whether that service comports with due process. . . . The Court acknowledges that service by Facebook is a relatively novel concept, and that it is conceivable that defendants will not in fact receive notice by this means. But, as noted, the proposed service by Facebook is intended not as the sole method of service, but instead to backstop the service upon each defendant at his, or its, known email address." (emphasis in original)); Ferrarese v. Shaw, 164 F. Supp. 3d 361, 367

(E.D.N.Y. 2016) ("Service by Facebook . . . has only been allowed in cases where 'the proposed service by Facebook is intended not as the sole method of service, but instead to backstop the service upon each defendant at . . . its[] known email address." (quoting PCCare247 Inc., 2013 WL 841037, at *5)); see also WhosHere, Inc. v. Orun, No. 1:13-Civ-00526(AJT), 2014 WL 670817, at *4 (E.D. Va. Feb. 20, 2014) (authorizing service through two email and two social networking accounts ostensibly belonging to defendant, where "defendant himself provided plaintiff with these email contacts, and also referred plaintiff to the social networking profiles which appear to be regularly viewed and maintained by defendant"); Baidoo v. Blood-Dzraku, 48 Misc. 3d 309, 313-15 (N.Y. Sup. Ct. 2015) (noting that "the [federal] cases permitting such service [via Facebook] have done so only on condition that the papers commencing the lawsuit be served on the defendant by another method as well"; permitting service through Facebook where (1) plaintiff submitted an affidavit "to which she annexed copies of the exchanges that took place between her and defendant when she contacted him through his Facebook page, and in which she identified defendant as the subject of the photographs that appear on that page"; (2) the Facebook exchanges "show[ed] that [the defendant] regularly logs on to his [Facebook] account"; and (3) plaintiff "ha[d] a mobile phone number for defendant," and accordingly could alert him by voice or text message "that a divorce action ha[d] been commenced and that he should check his [Facebook] account").

Service exclusively through Facebook – particularly in the absence of concrete evidence demonstrating regular use and the identity of the Facebook user – raises significant due process concerns.  As another court in this District has explained, "anyone can make a Facebook profile using real, fake, or incomplete information, and thus, there is no way for the Court to confirm whether the [Facebook profile bearing the defendant's name] . . . is in fact the . . .

[d]efendant to be served." Fortunato v. Chase Bank USA, N.A., No. 11 CIV. 6608 JFK, 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012)  Given these circumstances, courts that have permitted "backstop" service via Facebook have required plaintiff to offer concrete evidence demonstrating that the Facebook account at issue is regularly used and maintained by the defendant.

In Federal Trade Comm'n v. Pecon Software Ltd., for example, the FTC had obtained the defendants' purported e-mail addresses from Facebook pursuant to civil investigative demands; "[t]hese email addresses [we]re each derivations of [the defendant's] name, and the domain names [for the emails] [we]re consistent with the employment information and schools listed on [his] Facebook account and in a news article featuring him." Pecon Software Ltd., Nos. 12 Civ. 7186(PAE), 12 Civ. 7189(PAE), 12 Civ. 7192(PAE), 2013 WL 5288897, at *2 (S.D.N.Y. Sept. 18, 2013).  Similarly, in WhosHere, Inc. v. Orun, 2014 WL 670817, at *4 (E.D. Va. Feb. 20, 2014), defendant had provided plaintiff with an e-mail address and stated, "you can find me in all social network [sic] with this email address."  And in Baidoo v. Blood-Dzraku, as discussed above, plaintiff provided the court with a history of exchanges over Facebook between herself and the defendant in which the Facebook account at issue was used.  Baidoo, 48 Misc. 3d at 314-15.

Here, however, Plaintiff has demonstrated only that the name listed on the Facebook account in question, Mutaz Hyassat, is the same as the Defendant's name, and that some of the biographical information listed on the account – the city of residence and employer – matches the Defendant's biographical information.  (See Jan. 2, 2019 Pltf. Ltr., Ex. A (Dkt. No. 18-1); see also supra n.2)  Plaintiff has not offered evidence that the Defendant regularly uses and maintains the Facebook account at issue, however, nor has Plaintiff offered evidence

sufficient to demonstrate that the Facebook user is in fact the Defendant.  Given this record,

Plaintiff has not demonstrated that service through the Facebook account at issue is "reasonably

calculated . . . to apprise [Defendant] of the pendency of the action."  Mullane, 339 U.S. at 314.[3]

Accordingly, Plaintiff's application to effect service exclusively via Facebook message is denied.

## II.    SERVICE ON DEFENDANT'S ALLEGED CRIMINAL DEFENSE LAWYER

                In the alternative, Plaintiff seeks an order permitting her to effect service by

serving Kenneth Kerner, whom Plaintiff believes represents Defendant in a criminal

investigation stemming from the same conduct underlying the instant lawsuit.  (See Jan. 2, 2019

Pltf. Ltr. (Dkt. No. 18) at 1-2)  Courts in this District have, under certain circumstances,

permitted service upon a defendant's lawyer in another matter where service through standard

means has proven impracticable.  See, e.g., Ransome v. Epstein, No. 17-CV-616 (JGK), 2018

WL 637421, at *1-2 (S.D.N.Y. Jan. 30, 2018) (granting request to serve counsel "who currently

represents [defendant] in another litigation pending in this district"); Rampersad v. Deutsche

Bank Sec., Inc., No. 02CIV.7311(LTS)(AJP), 2003 WL 21073951, at *1 (S.D.N.Y. May 9, 2003)

(granting request to serve attorney who "acknowledged that he represented [defendant]").  Such

service may be permissible even where the attorney refuses to accept service on the defendant's

behalf, or has been denied authorization by defendant to accept such service.  See, e.g.,

Ransome, 2018 WL 637421, at *2 ("[Counsel's] objection to becoming a general agent of

process for [the defendant] is unfounded. . . . Indeed, this order does not even require [counsel]

to accept service on behalf of [the defendant], but rather finds that service on [counsel] is likely

to provide notice of the lawsuit to [the defendant], given that [counsel] is presumably in contact

---

[3]  The fact that the Facebook account was disabled within days of Plaintiff's counsel's message is
not sufficient – under the circumstances here – to demonstrate that the user is the Defendant.

with [the defendant] with regards to their representation of her in the other pending matter.");
Rampersad, 2003 WL 21073951, at *1 (allowing service upon counsel where counsel "told
Plaintiff's counsel that he had been in contact with [the defendant] and [the defendant] had
refused to allow [counsel] to accept service on his behalf").

    Where courts have permitted service upon a defendant's lawyer in another matter,
however, the fact of that representation has been well-established.  In Ransome, for example, the
lawyer in question was defendant's "counsel in another litigation pending in this Court."
Ransome, 2018 WL 637421, at *1.  And in Rampersad, the lawyer at issue had "acknowledged
that he represented [the defendant]."  Rampersad, 2003 WL 21073951, at *1.  Similarly, in Tube
City IMS, LLC v. Anza Capital Partners, LLC – where the court found backstop service upon an
attorney permissible – the lawyer at issue was "currently . . . representing [the defendant] in
another litigation . . . and [was] also represent[ing] [the corporate defendant] in the underlying
arbitration in this case.  Tube City IMS, LLC v. Anza Capital Partners, LLC, No. 14 Civ.
1783(PAE), 2014 WL 6361746, at *3 (S.D.N.Y. Nov. 14, 2014).  Likewise in Bozza v. Love, No.
15 Civ. 3271(LGS), 2015 WL 4039849, at *2 (S.D.N.Y. July 1, 2015), the lawyer plaintiff sought
to serve was "counsel of record for [d]efendant in an unrelated lawsuit currently pending in Los
Angeles County Superior Court," and "[f]rom January 2015 through the commencement of this
action in April 2015, [p]laintiff's counsel corresponded with [the lawyer to be served] on several
occasions about this dispute."

    Here, by contrast, the evidence that Kerner currently represents Defendant is
much more equivocal.  Plaintiff's counsel – Ariadne Panagopoulou – asserts that on December
19, 2018 "our office had a telephone conversation with [NYPD] Detective Santos who informed

us that attorney Kenneth Todd Kerner currently represents the Defendant with respect to the ongoing criminal investigation."  (Panagopoulou Aff. (Dkt. No. 18-3) ¶ 5)

As an initial matter, it does not appear that Ms. Panagopoulou has personal knowledge of what the NYPD detective said.  An affirmation as to what "our office" heard from the detective is of no evidentiary use.  Even if Ms. Panagopoulou spoke directly with the NYPD detective, Plaintiff has not provided any details explaining why the detective believed at that time that Kerner was representing Defendant.  Moreover, even if Kerner was representing Defendant in December 2018, there is no basis for this Court to find that he is representing Defendant now, in September 2020.

Ms. Panagopoulou also asserts that on January 8, 2019, she spoke with Kerner, who refused to "answer any of [her] questions regarding the extent of his involvement in the criminal investigation against Mutaz Hyassat."  (Jan. 8, 2019 Pltf. Ltr. (Dkt. No. 19) at 1)  Kerner only admitted that he had met with Hyassat.  (Id.)

Given this record, there is no credible evidence that Kerner ever represented Hyassat, much less that he represents Hyassat now.  Accordingly, this Court cannot find that service on Kerner is "reasonably calculated . . . to apprise [Defendant] of the pendency of the action," Mullane, 339 U.S. at 314, and Plaintiff's request for permission to effect service on Defendant via service on Kenneth Kerner is denied.

## CONCLUSION

For the reasons stated above, Plaintiff's application for an order stating that (1) service via Facebook may be deemed sufficient service; or (2) Defendant may be served through service on Kenneth Kerner, is denied.  The certificate of default issued by the Clerk of Court

(Dkt. No. 37) is vacated.  Plaintiff's March 9, 2020 application for an order to show cause is

denied.

Dated:  New York, New York
        September 9, 2020

                                        SO ORDERED.

                                        _____
                                        Paul G. Gardephe
                                        United States District Judge