UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                                              Plaintiff,

                    -against-

MUTAZ HYASSAT,

                                              Defendant.

**ORDER**

18 Civ. 6110 (PGG)

PAUL GARDEPHE, U.S.D.J.:

        Plaintiff Jane Doe alleges that Defendant Mutaz Hyassat sexually assaulted her, and asserts claims for battery, assault, false imprisonment, and intentional infliction of emotional distress. (See Am. Cmplt. (Dkt. No. 7) ¶¶ 1, 60-84) According to Plaintiff, Defendant is a Jordanian national and career diplomat who currently resides in Austria. Defendant was previously employed by the Permanent Mission of Jordan to the United Nations in New York City. (Id. ¶¶ 12-13; June 30, 2021 Ex Parte Motion, at 3; see also Weigel Aff. ¶ 4; id., Ex. B (containing Defendant's curriculum vitae))

        After numerous unsuccessful attempts to serve Defendant, Plaintiff now moves for permission to serve Defendant under Rule 4(f)(3) of the Federal Rules of Civil Procedure via a recently discovered email address – mutazhyassat@gmail.com. (June 30, 2021 Ex Parte Motion, at 3) In a separate ex parte letter, Plaintiff requests that her motion and the Court's order be filed under seal until two days after the Court issues its order concerning her application, so that Defendant does not disable his email account prior to being served. (June 30, 2021 Ex Parte Motion to Seal)

        For the reasons stated below, Plaintiff's application for alternative service will be granted.

## BACKGROUND

The Complaint was filed on July 5, 2018, and the Amended Complaint was filed on September 18, 2018.  (See Cmplt. (Dkt. No. 1); Am. Cmplt. (Dkt. No. 7))  After a summons was issued, Plaintiff's counsel hired Serve NY, Corp., a process server, to serve Defendant. (Dec. 9, 2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 3)  Searches conducted on a proprietary database and over the internet revealed three possible residential addresses for Defendant in New York City.  Serve NY's efforts to serve Defendant at these three addresses were unsuccessful.  (Id.)  At two of the addresses, the process server was told that Defendant was not a resident.  (Id.; see also Agelopoulos Aff. (Dkt. No. 16-1) at 2)  At the third location – the Permanent Mission of Jordan to the United Nations – the process server was refused access, and Mission personnel refused to accept service.  (Dec. 9, 2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 3; see also Agelopoulos Aff. (Dkt. No. 16-1) at 2)

On November 29, 2018, a different process server registered for and attended a conference at United Nations Headquarters, anticipating that Defendant would be in attendance and could be served when he left U.N. Headquarters after the conference.[1]  The process server was not able to locate Defendant after the conference, however.  (Dec. 9, 2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 3-4; see also Antiaris Aff. (Dkt. No. 16-1) at 1)

Following these failed efforts to serve Defendant, Plaintiff requested permission to serve Defendant by:  (1) emailing Defendant at two email addresses listed for Defendant in United Nations databases; and (2) contacting Defendant via his Facebook profile.  (Dec. 9, 2018

---

[1] According to Plaintiff, service of process within U.N. Headquarters would be invalid.  (Dec. 9, 2018 Pltf. Ltr. Mot. (Dkt. No. 16) at 3 (citing to the Convention on the Privileges and Immunities of the United Nations, Art. 2, § 2))

Pltf. Ltr. Mot. (Dkt. No. 16) at 4)  On December 17, 2018, this Court granted Plaintiff's request. (Dec. 17, 2018 Order (Dkt. No. 17) at 4)

Later in December 2018, Plaintiff unsuccessfully attempted to serve Defendant through these email addresses and through Facebook.  (See Panagopoulou Aff. (Dkt. No. 18-3) ¶¶ 2-4) According to Plaintiff, "both e-mails to Mr. Hyassat (to Hyassat@jordanmissionun.com and to mhyassat@jordanmission.ch) bounced back as undeliverable." (Jan. 2, 2019 Pltf. Ltr. (Dkt. No. 18) at 1)  And, while Plaintiff sent a Facebook message to the account believed to belong to Defendant[2] (see id., Ex. A (Dkt. No. 18-1)), the Facebook user never responded to the message and the Facebook account was disabled a few days later.  (Panagopoulou Aff. (Dkt. No. 18-3) ¶ 3; see also Jan. 2, 2019 Pltf. Ltr., Ex. B (Dkt. No. 18-2))

On January 2, 2019, Plaintiff requested that this Court deem Plaintiff's Facebook message to be sufficient service.  (Jan. 2, 2019 Pltf. Ltr. (Dkt. No. 18) at 1 (noting that "Plaintiff has made varied efforts to effectuate service of process upon Defendant, and that Plaintiff has good grounds to believe that Hyassat is very well aware of this civil action against him but is trying to intentionally avoid service"))  In the alternative, Plaintiff sought the Court's permission to effect service on Defendant by serving Kenneth Kerner, whom Plaintiff believes is Defendant's attorney in connection with a criminal investigation related to the alleged conduct underlying this action.  (Id. at 1-2)

On September 9, 2020, this Court denied Plaintiff's request.  (Sept. 9, 2020 Order (Dkt. No. 39))  While noting that service through a combination of email and Facebook may be

---

[2]  The Facebook account is in the name of "Mutaz Hyassat," and the biographical information for that account states that the user "[w]orks at the United Nations," "[s]tudied at University of Jordan," and "[l]ives in New York, New York." (See Jan. 2, 2019 Pltf. Ltr., Ex. A (Dkt. No. 18-1))

sufficient, this Court ruled that service through Facebook alone is not.  (Id. at 6 ("[C]ourts have relied on Facebook service only as a 'backstop' for service by other means." (citing cases)))  This Court also noted that there was insufficient evidence that the Facebook account was maintained by Defendant, precluding a finding that service through Facebook is "reasonably calculated to apprise Defendant of the pendency of the action."  (Id. at 8-9 (quotation marks, alterations, and citation omitted); see also id. ("Plaintiff has not offered evidence that the Defendant regularly uses and maintains the Facebook account at issue, however, nor has Plaintiff offered evidence sufficient to demonstrate that the Facebook user is in fact the Defendant."))  This Court also denied Plaintiff's request to serve Defendant through his alleged attorney, because there was insufficient evidence that the attorney actually represented Defendant.  (Id. at 9-11)

On June 30, 2021, Plaintiff moved ex parte for leave to serve Defendant through the following Gmail address:  mutazhyassat@gmail.com (the "Gmail Address").  Plaintiff represents that this email address was recently discovered in the minutes for an October 15, 2015 meeting at the headquarters of the International Atomic Energy Agency (the "IAEA") in Vienna, Austria (the "Minutes").  (Id. at 3; Weigel Aff. ¶ 5; id., Ex. C)  The Minutes address the Seventh Organizational Meeting of the Contracting Parties to the Convention on Nuclear Safety.  Jordan is one of the "Contracting Parties."  An attachment to the Minutes indicates that Defendant attended the meeting as a representative of Jordan, and that his "official mailing address" is "Permanent Mission of Jordan to the IAEA, Rennweg 17/4, 1030 Vienna, Austria."  (See Weigel Aff. ¶ 5; id., Ex. C, at 31 (capitalization omitted))  Defendant's telephone number and email address are printed below his "official mailing address."  (Id., Ex. C, at 31)

In a February 23, 2022 order, this Court directed Plaintiff to supplement her motion for alternative service "by submitting evidence that the [Gmail Address] is operational,

that Defendant has recently used this email address, and that service on that email address is reasonably calculated to apprise Defendant of the pendency of this action." (Feb. 23, 2022 Order, at 4)

On March 9, 2022, Plaintiff filed supplemental materials, including a declaration from Jessica Thorpe, a senior associate at Alaco, a London-based business intelligence firm. (See March 9, 2022 Ltr.; Thorpe Decl.)  Thorpe states that she conducted an investigation to uncover email addresses used by Defendant. (Thorpe Decl. ¶ 2)  As part of her investigation, Thorpe used two email verification sites – zerobounce.net and tools.emailhippo.com – to confirm that the Gmail Address is currently active.  (See id. ¶ 3 (describing four-step process for confirming that an email account is active, including "using the Simple Mail Transfer Protocol . . . to ensure that the mailbox exists and is able to receive messages"); id., Exs. 1-3)  Thorpe further states that the Gmail Address was used to register Defendant's now-disabled Facebook account. (Thorpe Decl. ¶ 4)

In addition to the Gmail Address, Thorpe's investigation revealed a Yahoo email address – mzhyassat@yahoo.com – that Thorpe has confirmed is active.  (Id. ¶ 5, id., Exs. 10-11)  By accessing mobile directories through an online database, the investigation also uncovered two official government email addresses – mutaz.hyassat@fm.gov.jo and mutaz.h@fm.gov.jo – each linked to a cell phone number reportedly owned by Defendant.  Thorpe has been unable to verify whether these government email addresses are active.  Thorpe suggests, however, that "[i]t may be that the security surrounding official government email addresses prevents the email verification websites from operating properly."[3]  (Thorpe Decl. ¶¶ 6-7; id., Exs. 4-9)

---

[3] Thorpe's investigation also revealed that the two email addresses through which Plaintiff previously attempted to serve Defendant – hyassat@jordanmissionun.com and mhyassat@jordanmission.ch – are inactive. (Thorpe Decl. ¶¶ 8-10; id., Exs. 12-15)

In her June 30, 2021 application, Plaintiff argues that "[a]lternative service via [Defendant's Gmail Address] is exceedingly appropriate here because, despite multiple attempts and best efforts, [Plaintiff] has been unable to serve Defendant." (June 30, 2021 Ex Parte Motion, at 3)  Plaintiff further argues that alternative service is necessary given that Defendant is now believed to live in Austria and "is unable to be served through normal means." (Id.)

In Plaintiff's March 9, 2022 letter, she states that, if this Court grants her application, she also intends to send the Amended Complaint to mzhyassat@yahoo.com, mutaz.hyassat@fm.gov.jo, and mutaz.h@fm.gov.jo. (March 9, 2022 Ltr., at 2)

## DISCUSSION

### I.      LEGAL STANDARD

Rule 4(f) of the Federal Rules of Civil Procedure permits a court to direct service on an individual in a foreign country in one of three ways:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . [,] or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

"'[T]here is no hierarchy among the subsections in Rule 4(f),'" In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 265 (S.D.N.Y. 2012) (quoting Advanced Aerofoil Techs., AG v. Todaro, No. 11 Civ. 9505 (ALC)(DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012)), and "[a] plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." S.E.C. v. Anticevic, 05 CV 6991 (KMW),

2009 WL 361739, at \*3 (S.D.N.Y. Feb. 13, 2009) (emphasis omitted).  Moreover, "'the decision

[of] whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to

the sound discretion of the district court.'"  Madu, Edozie & Madu, P.C. v. SocketWorks Ltd.

Nigeria, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (quoting RSM Prod. Corp. v. Fridman, 06 CIV.

11512 (DLC), 2007 WL 1515068, at \*1 (S.D.N.Y. May 24, 2007)).

      "To obtain the Court's permission to utilize Rule 4(f)(3), [Plaintiff] must show

that 'the facts and circumstances of the present case necessitate . . . district court intervention.'"

United States v. Lebanese Canadian Bank SAL, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting

Rio Prop., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)).  "'[S]ervice must be

directed by the court and must not be prohibited by international agreement.'"  Zhang v.

Baidu.com Inc., 932 F. Supp. 2d 561, 565 (S.D.N.Y. 2013) (quoting Advanced Aerofoil, 2012

WL 299959, at \*1).  A court must also determine that the proposed method of service "is

reasonably calculated, under all the circumstances, to give actual notice to the party whose

interests are to be affected by the suit or proceeding, and to afford him an adequate opportunity

to be heard.'"  KPN B.V. v. Corcyra D.O.O., No. 08 CIV. 1549 (JGK), 2009 WL 690119, at \*1

(S.D.N.Y. Mar. 16, 2009) (quoting Levin v. Ruby Trading Corp., 248 F. Supp. 537, 540-41

(S.D.N.Y. 1965)).  In deciding whether constitutional due process is satisfied by a particular

method of service, a court may consider "'the practicalities in a given case.'"  Id. (quoting same).

## II.   ANALYSIS

### A.   Whether Service by Alternative Means Is Necessary

      To determine whether alternative service is appropriate, "district courts in this

Circuit have generally required:  (1) a showing that the plaintiff has reasonably attempted to

effectuate service on the defendant, and (2) a showing that the circumstances are such that the

court's intervention is necessary." <u>Lebanese Canadian Bank SAL</u>, 285 F.R.D. at 267 (quotation marks and citations omitted).

Here, in the four years since this case was filed, Plaintiff has taken reasonable steps to effect service on Defendant. As described above, Plaintiff hired Serve NYC to serve Defendant at four addresses – two residential addresses, and two United Nations-related addresses. Each of these attempts failed. (Antiaris Aff. (Dkt. No. 16-1) at 1; Agelopoulos Aff. (Dkt. No. 16-1) at 2) Plaintiff also attempted to serve Defendant via email and Facebook. Each of these attempts failed as well; emails to Defendant's UN email addresses bounced back as undeliverable, and the Facebook account believed to belong to Defendant was disabled a few days after Plaintiff sent a message to that account. (Panagopoulou Aff. (Dkt. No. 18-3) ¶¶ 2-4) Plaintiff's counsel also contacted Kenneth Kerner, an attorney whom Plaintiff's counsel believes is representing Defendant in a related criminal investigation. Kerner did not confirm that he was representing Defendant, and he refused to accept service on Defendant's behalf. (Jan. 8, 2019 Pltf. Ltr. (Dkt. No. 19) at 1) Finally, Plaintiff believes that Defendant is currently residing in Vienna, Austria (Weigel Aff. ¶ 3; <u>id.</u>, Ex. A), where he continues his work for the Jordanian government.

Given these circumstances, this Court concludes that Plaintiff has demonstrated that this Court's intervention is necessary, and that alternative service is warranted.

**B.    Whether Service by the Proposed Means**
**Is Prohibited by International Agreement**

Plaintiff seeks permission to serve Defendant via email. (June 30, 2021 Ex Parte Motion, at 3) Rule 4(f)(3) permits a court to direct service on a defendant in a foreign country by any means "not prohibited by international agreement." Service on a foreign defendant pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil

8

or Commercial Matters, Nov. 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Service Convention") is "mandatory" when serving a defendant who resides in a foreign country that is a signatory to the convention. Volkswagenwerk v. Aktiengesellschaft, 486 U.S. 694, 699 (1988); see also Burda Media, Inc. v. Viertel, 417 F.3d 292, 299-300 (2d Cir. 2005).

Here, Austria is a signatory to the Hague Service Convention. See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc., No. 17 CIV. 5553 (LGS), 2020 WL 7093592, at *5 (S.D.N.Y. Dec. 4, 2020) (noting that "Austria ratified the Service Convention on July 14, 2020, and the Service Convention entered into force for Austria on September 12, 2020"). Although Austria has objected to Article 10(a) of the Hague Service Convention – which permits service via "postal channels"[4] – such an objection does not extend to service via email. See, e.g., F.T.C. v. Pecon Software Ltd., No. 12-cv-7186 (PAE), 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10." (citations omitted)).

This Court concludes that service by email is not prohibited by international agreement.

C.    **Whether Service by the Proposed Means Comports with Due Process**

Where a plaintiff asks a court to authorize service by email, "the court must determine whether the alternative method is reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 329, 331 (S.D.N.Y.

---

[4] See July 14, 2020 Reservation & Declarations, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1425&disp=resdn.

2015) (quotation marks and citation omitted).  To make such a finding here, the Court must

conclude that the Gmail Address is (1) owned, controlled, or has been used by Defendant; and

(2) that an email sent to that address is likely to be seen by Defendant.  See Zanghi v. Ritella, No.

19 Civ. 5830 (NRB), 2020 WL 6946512, at *2 (S.D.N.Y. Nov. 25, 2020) (noting that plaintiffs

typically show that "(1) the email address is indisputably connected with the defendant, such as

the defendant using the account to personally communicate with the plaintiff or publicly

advertising that email address as a means to conduct official business with the defendant, and (2)

the account is active and has been recently used" (citations omitted)).

   As discussed above, Plaintiff states that the Gmail Address was discovered in the

Minutes for an October 15, 2015 meeting held at the Vienna headquarters of the International

Atomic Energy Agency.  (June 30, 2021 Ex Parte Motion, at 3; id., Ex. C, at 31)  The Minutes

indicate that Defendant attended the meeting as a representative of Jordan.  (Id., Ex. C, at 31)

Given (1) the Defendant's past employment with the Permanent Mission of Jordan to the U.N.;

and (2) that the email address found in the Minutes – mutazhyassat@gmail.com – includes

Defendant's full name, this Court finds that the Gmail Address is likely owned, controlled, or has

been used by Defendant.

   As to whether an email sent to the Gmail Address is likely to be seen by

Defendant, Plaintiff asserts that two email verification websites confirm that the Gmail Address

is active – that is, that emails sent to that address will not "bounce back" as undeliverable to the

sender.  (See Thorpe Decl. ¶ 3)  Plaintiff has also provided two other email addresses that appear

to be connected to Defendant – a Yahoo email address, which Plaintiff has confirmed is active,

and an official Jordanian government email address that contains the Defendant's full name.  In

addition, the government email address is associated with a phone number reportedly assigned to Defendant.  (Id. ¶¶ 5-7)

Having considered all the circumstances, this Court concludes that service on the Gmail Address, the Yahoo email address, and the official Jordanian government email address are – collectively – likely to provide Defendant with notice of this litigation. .

This conclusion is bolstered by the fact that Defendant likely received notice of this action as a result of the message Plaintiff sent to his Facebook account in December 2018. While this Court previously held that service through the Facebook account alone was not sufficient – noting, inter alia, that Plaintiff had not "offered evidence sufficient to demonstrate that the Facebook user is in fact the Defendant" (see Sept. 9, 2020 Order (Dkt. No. 39) at 8-9) – Plaintiff has since offered evidence that the Gmail Address – which this Court finds belongs to Defendant – was used to register this Facebook account.  (Thorpe Decl. ¶ 4)  As discussed above, the holder of the Facebook account disabled the account shortly after Plaintiff attempted to serve Defendant through that account.  Since Defendant presumably had to access his Facebook account in order to disable it, it is likely that Defendant is aware of the Facebook message he received and the documents attached to that message.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for alternative service is granted.

Plaintiff will serve Defendant by emailing the summons and Amended Complaint to

mutazhyassat@gmail.com, mzhyassat@yahoo.com, and mutaz.hyassat@fm.gov.jo.  This Order

will be docketed on July 19, 2022.  Plaintiff is directed to file her ex parte motions and papers on

the public docket by July 21, 2022.

Dated:  New York, New York
       July 15, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge